# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: ASBESTOS PRODUCTS<br>LIABILITY LITIGATION (NO. VI) | | **MDL DOCKET NO. 875** |

**This Document Relates To:**

| | | |
|---|---|---|
| GEORGIA ARENDT, Individually and as<br>Special Administrator of the Estate of<br>ANTHONY ARENDT, Deceased, | ) | |
| | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | EDPA Case No.: 13-CV-60017 |
| | ) | |
| v. | ) | |
| | ) | *Transferred from E.D. Wis.* |
| | ) | *Case No.: 13-cv-727* |
| A.W. CHESTERTON COMPANY, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## DEFENDANT CBS CORPORATION'S MEMORANDUM OF LAW IN SUPPORT OF ITS FED. R. CIV. P. 56(c) MOTION FOR SUMMARY JUDGMENT

COMES NOW CBS Corporation ("Westinghouse")[1] and submits this Memorandum of Law in Support of its Summary Judgment Motion.  Plaintiff alleges that her decedent, Mr. Anthony Arendt, was injured due to contact with asbestos associated with Westinghouse products.  Westinghouse is entitled to summary judgment for two reasons:  First, Plaintiff's claims are barred by the Wisconsin statute of limitations.  Second, Plaintiff has failed to raise an issue of fact that Mr. Arendt was exposed to asbestos attributable to Westinghouse.  Finally, Plaintiff failed to file any Rule 26(a)(2) expert reports in this case.  Plaintiff has therefore failed

---

[1] CBS Corporation (a Delaware corporation f/k/a Viacom Inc.) is a successor by merger to CBS Corporation (a Pennsylvania corporation f/k/a Westinghouse Electric Corporation).

to establish causation.   Consequently, Westinghouse is entitled to judgment as a matter of Wisconsin law[2] in this case.

**STATEMENT OF UNDISPUTED MATERIAL FACTS**[3]

Plaintiff's complaint was filed on June 26, 2013, alleging that the named defendants were responsible for Mr. Arendt's development of asbestosis.   (*Compl.*, ¶ 28.) (attached to Westinghouse's motion as Exhibit A.)  In 2009, Mr. Arendt filed a lawsuit seeking damages for his development of "asbestos disease."  (*D.E. 66*, p. 3.)   That lawsuit was dismissed with prejudice "because the asbestos disease supported in the AO 12 submissions was not sufficient to state a claim for relief."  (*Id.*)  That dismissal was upheld by the Third Circuit.  (*Id.*)  Thus Plaintiff's current complaint is based on Mr. Arendt's alleged development of asbestosis only. (*See generally D.E. 66.*)

Mr. Arendt, according to his medical records, was diagnosed with asbestosis as early as 2008.   (*See excerpts from Anthony Arendt's medical records*) (attached to Westinghouse's motion as Exhibit B.)  Indeed, Mr. Arendt himself testified, in 2012, that he was diagnosed with asbestosis "[a]bout five years ago."  (*Mar. 9, 2012 Dep. of Anthony Arendt ("Arendt Vol. II")*, 296:14-297:12) (attached to Westinghouse's motion as Exhibit C.)  Plaintiff failed to file any expert disclosures pursuant to Rule 26(a)(2).

Mr. Arendt was deposed in this case beginning on March 2, 2012.  Mr. Arendt testified that he worked at the Proctor & Gamble paper mill in Green Bay, Wisconsin (herein "P&G") for 36 years, starting in 1956.  (*Mar. 2, 2012 Dep. of Anthony Arendt ("Arendt Vol. I")*, 11:19-

---

[2] As this case was transferred from federal district courts in Wisconsin, Wisconsin substantive law applies to these claims.  *Hogston v. Allis-Chalmers Corp.*, 672 F.Supp.2d 705, 708 n.3 (E.D. Pa. 2009); *In re Asbestos Prods. Liab. Litig. (No. VI)*, 2009 WL 2031772 at *1, n. 1 (E.D. Pa. July 10, 2009).

[3] In considering Westinghouse's motion, this Court must view the evidence and all inferences arising reasonably therefrom in the light most favorable to Plaintiffs.  *Lexington Ins. Co. v. Western Pa. Hosp.*, 423 F.3d 318, 322 n.2 (3d Cir. 2005); *Hogston*, 2009 WL 4583501 at *1. Westinghouse's "Statement of Undisputed Material Facts" reflects that standard and, as such, is offered solely for purposes of its motion and does not constitute its admission of any fact stated therein for any other purpose.

13:12) (attached to Westinghouse's motion as Exhibit D.)  Mr. Arendt worked on the Unit 12 paper machine at P&G for approximately two years.  (*Arendt Vol. I*, 73:2-12; *Arendt Vol. II*, 322:15-23.)  Unit 12 was started up in about 1966.  (*Arendt Vol. II,* 238:4-9.)  Mr. Arendt believed a turbine associated with the Unit 12 paper machine was made by Westinghouse, though he could not explain why he thought the turbine was made by Westinghouse.  (*Id.* at 313:22-314:12.)  He did not see a name plate or anything else that identified the turbine as being made by Westinghouse.  (*Id.* at 323:11-324:13.)  Mr. Arendt recalled there being some insulation on the outside cover of this turbine.  (*Id.* at 316:23-317:15.)  He believed that the insulation on the turbine was asbestos-containing.  (*Id.* at 318:16-319:17.)  He thought the turbine insulation contained asbestos because it looked like other insulation in the mill that he knew was asbestos.  (*Id.* at 320:8-16.)  He did not know what type of insulation was recommended by Westinghouse for use on the turbine. (*Id.*)  Mr. Arendt recalled seeing the turbine insulated.  (*Id.* at 320:22-322:23.)  He estimated that he may have seen this work occur about two times during the time he worked on Unit 12.  (*Id.*)  The insulation used came in a bag and was mixed with water, then applied to the turbine.  (*Id.* at 324:25-326:7.)

    In 1969, Mr. Arendt went to work on Unit 14, which was not yet completed.  (*Arendt Vol. I*, 122:13-24.)  He worked on Unit 14 until he retired in 1992.  (*Id.* at 73:2-12.)  He recalled that part of his job was to start up a turbine associated with this unit, which he believed was made by Westinghouse.  (*Id.* at 126:7-128:8.)  He did not recall seeing the name "Westinghouse" on the turbine itself, but thought it was made by Westinghouse based on conversations with other workers.  (*Id.*)  The cover of this turbine was only removed every 5 years.  (*Id.* at 129:1-20.)  He did not think that the turbine was insulated.  (*Id.*)  Mr. Arendt did not work on the turbine himself, but he recalled seeing work done on this turbine on two occasions.  (*Id.* at 139:10-

145:25.)  He recalled a large gasket that had to be removed when the turbine cover was lifted off. (*Id.*)  One of the times he picked up the old gasket off the floor and threw it away.  (*Id.*)  Though he thought that this gasket might have contained asbestos, the process of picking it up off of the floor did not create any dust.  (*Id.*)  Mr. Arendt did not know whether the gasket he saw removed from the turbine was original to the turbine.  (*Arendt Vol. II*, 335:10-18.)

Mr. Arendt also recalled working around a number of motors at P&G, including several made by Westinghouse.  (*Id.* at 338:3-25.)  He recalled seeing electricians remove the covers from motors to replace the brushes and blow the motor out.  (*Id.* at 342:6-343:20.)  He participated in this work on occasion.  (*Id.*)  He also saw electricians remove failed motors and replace them with new ones.  (*Id.* at 343:24-345:17.)  Motors that failed were sent off site for repairs.  (*Id.* at 345:18-347:3.)  Neither he nor anyone else at P&G ever did any winding of motors.  (*Id.*)  Mr. Arendt thought the motors brushes were made out of carbon, and as they wore down, the material from which the brushes were made would settle in the motor itself until it got cleaned out.  (*Id.* at 347:5-350:6.)  Mr. Arendt thought that the dust in the motors came from these brushes wearing down.  (*Id.*)

According to former Westinghouse turbine engineer Mr. Douglas M. Ware, Westinghouse supplied six mechanical drive turbines to the P&G facility in Green Bay, Wisconsin.  (*Nov. 2, 2011 Dep. of Douglas M. Ware ("Ware Dep.")*, 204:25-209:2) (excerpts attached hereto as Exhibit E.)  Westinghouse only supplied thermal insulation for two of the six turbines it supplied to P&G.  (*Id.*)  The last turbine Westinghouse supplied to P&G was shipped in 1962.  (*Id.*)

### STANDARD APPLICABLE TO SUMMARY JUDGMENT MOTIONS

This court must enter summary judgment if no genuine issue remains and the undisputed evidence, instead, shows that the defendant is entitled to a judgment in its favor as a matter of law. Fed. R. Civ. P. 56. The defendant must first identify "an absence of evidence to support [the plaintiff's] case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once such a deficiency has been identified, the plaintiff must "go beyond the pleadings" and present admissible evidence tending to prove "specific facts showing that there is a genuine issue for trial" as to each essential element of her claims. *Id.*, at 323-24. *See also*, *Lexington Ins. Co.*, 423 F.3d at 322 n.2; *Hogston*, 2009 WL 4583501 at *1.

A "mere scintilla" of evidence cannot give rise to a genuine issue capable of defeating a summary judgment motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Rather, "there must be evidence on which a jury might rely;" not evidence giving rise to mere speculation or conjecture as to the defendant's liability. *Barwick v. Celotex Corp.*, 736 F.2d 946, 958-59 (4th Cir. 1984) (*quoting*, *Seago v. North Carolina Theatres*, 42 F.R.D. 627, 632 (E.D.N.C. 1966), *aff'd*, 388 F.2d 987 (4th Cir. 1967)). *See also*, *Anderson*, 477 U.S at 252; *Lexington Ins. Co.*, 423 F.3d at 332-33; *Hogston*, 2009 WL 4583501 at *1. As stated by this Court in *Dion v. Anchor Packing Co.*,

> "A mere possibility" of causation is not sufficient, and "when the matter remains one of pure speculation or conjecture or the probabilities are at best evenly balanced," then summary judgment must be granted for defendant. *Zielinski v. A.P. Green Indus., Inc.*, 263 Wis.2d 294, 661 N.W.2d 491, 497 (Wis.Ct.App.2003) (quoting *Merco Distrib. Corp. v. Commercial Police Alarm Co.*, 267 M.W.2d 652, 655 (Wis.1378)). When there is "no credible evidence upon which the trier of fact can base a reasoned choice between ... two possible inferences, any finding of causation" would be impermissibly based on speculation and conjecture. *Merco*, 267 N.W.2d at 655.
>
> It follows that, as for product identification in the asbestos context, a defendant must be granted summary judgment when plaintiff's exposure to defendant's asbestos-containing products was a "mere possibility." *Zielinski*, 661 N.W.2d at 497. However, summary judgment must be denied when plaintiffs

have presented "credible evidence from which a reasonable person could infer that [plaintiff] was exposed to [defendant's] products." *Id.*

*Dion v. Anchor Packing Co.*, No. 2:10-CV-64681, 2011 WL 6026704, *1 n.1 (E.D. Pa. Oct. 5, 2011).

## ARGUMENT

**I.      Plaintiff's claim for asbestosis is barred by the Wisconsin statute of limitations**

Under Wisconsin law, an action for injury to a person must be brought within three years or be barred.  Wis. Stat. 893.54.  In Wisconsin, a cause of action for a disease, like asbestosis, accrues when the plaintiff is diagnosed with that disease.  *Borello v. U.S. Oil Co.,* 388 N.W.2d 140, 142-45 (Wis. 1986).  Mr. Arendt was first diagnosed with asbestosis as early as 2008, according to his medical records.  Because his action for asbestosis was not brought until 2013, Plaintiff's claims are barred.

**II.     Plaintiff has failed to raise an issue of fact as to exposure to asbestos from Westinghouse products.**

In *Dion v. Anchor Packing Co.*, this Court granted defendant Goulds Pumps, Inc.'s motion for summary judgment because, although a witness had testified to seeing the plaintiff work on a Goulds pump, there was no evidence that the pump contained asbestos.  *Dion*, 2011 WL 6026704, *1 n.1.  This Court found that the plaintiff "failed to provide sufficient credible evidence from which a reasonable person could infer that Mr. Dion was exposed to any Goulds Pumps, Inc. asbestos-containing products."  *Id.*  A co-worker of Dion's testified to seeing Dion replace the packing on a Goulds pump but did not know what the packing or gasket materials in the Goulds pump were made of.  *Id.*  The Court noted that plaintiff did not produce any documents indicating that Goulds in fact sold asbestos-containing products to Dion's employer and there was no testimony from any witness who could raise an issue of fact as to whether

asbestos attributable to Goulds was present at Dion's place of employment. *Id.* The Court also noted that the plaintiff's assertion that Goulds manufactured and sold asbestos-containing pumps during the relevant time period, without any evidence to back this statement up or connect any Goulds asbestos-containing product to Dion and his place of employment, along with plaintiff's argument that Goulds "has not denied" that it sold asbestos-containing products to Dion's place of employment, were "not enough to allow Plaintiff to meet his burden of producing sufficient evidence from which a reasonable person could infer that Plaintiff was exposed to Defendant's asbestos-containing products." *Id.*

To sustain a claim of negligence or strict products liability, a plaintiff must have evidence that, if believed, establishes that the defendant's alleged conduct was a "substantial factor" in causing the plaintiff's injury. As summarized by the court in *Barringer v. Ashland Cty. Town Ins.*, 246 Wis. 2d 670, 630 N.W.2d 276, 2001 WL 477639 at *3 (Wis. App. May 8, 2001), "[f]or negligence to lead to liability, it must be a cause of the harm. An 'actor's negligent conduct is not a substantial factor in bringing about harm to another if the harm would have been sustained even if the actor had not been negligent.'" (internal cits. omitted) (*quoting*, *Beacon Bowl, Inc. v. Wisconsin Elec. Power Co.*, 176 Wis. 2d 740, 788, 501 N.W.2d 788 (1993)). Thus, Wisconsin law holds that, where a plaintiff or her decedent has been shown to have experienced a substantial lifetime dose of asbestos exposure but can establish only *de minimis* contact with asbestos attributable to a particular defendant, that specific source of exposure ***cannot*** be viewed as a substantial causative factor, especially absent competent medical testimony attributing causation to that particular exposure. *See, e.g.*, *Summers v. Certainteed Corp.*, 886 A.2d 240, 244 (Pa. Super. [App. Div.] 2005); *Bartel v. John Crane, Inc.*, 316 F. Supp. 2d 603, 610-11 (N.D. Ohio 2004), *aff'd sub nom. Lindstrom v. A-C Prod. Liab. Trust*, 424 F.3d 488 (6th Cir.

2005); *Chavers v. General Motors Corp.*, 349 Ark. 550, 563-64, 79 S.W.3d 361 (2002); *Benshoof v. National Gypsum Co.*, 978 F.2d 475, 477 (9th Cir. 1992). The colorful observation of Georgia's Supreme Court in *Cheeves v. Danielly*, 80 Ga. 114, 117, 4 S.E. 902, 903 (1887) over a century ago remains remarkably apt:

> The throwing of a grain of sand into a creek would, to some extent, cause the creek to dam up, but it would not be appreciable; other and contingent circumstances would be so great as to make whatever damage that small act might do merely imaginary or possible.

In short, while the lapse of time (and the intervening bankruptcy of most major manufacturers of asbestos-containing materials used in the United States) may make it difficult or even impossible for a particular plaintiff to prove substantial exposure to asbestos that is attributable to a still-solvent defendant, such circumstances do not justify the judicial indulgence of:

> a fiction that each and every exposure to asbestos, no matter how minimal in relation to other exposures, implicates a fact issue concerning substantial-factor causation in every "direct evidence" case. The result, in our view, is to subject defendants to full joint-and-several liability for injuries and fatalities in the absence of any reasonably developed scientific reasoning that would support the conclusion that the [asbestos attributable to] the defendant was a substantial factor in causing the harm.

*Gregg v. V-J Auto Parts*, 596 Pa. 274, 292, 943 A.2d 216 (2007). Thus, even if a plaintiff has proven at least some actual contact with, or exposure to, defendant-attributable asbestos, his proof of causation has still failed as a matter of law absent evidence that this particular exposure contributed sufficiently to his overall lifetime asbestos exposure dose such that it can rationally be considered a substantial factor in causing his injury.

Plaintiff has failed to raise an issue of fact that Mr. Arendt was exposed to Westinghouse-attributable asbestos from Westinghouse turbines. At the outset it is worth noting that Mr. Arendt's identification of turbines associated with the Unit 12 and Unit 14 paper machines as

being made by Westinghouse is dubious at best.  He could not recall actually seeing a Westinghouse name plate on either turbine; instead, he relied on his recollection of conversations with others to identify the manufacturer of these turbines.  Moreover, the last Westinghouse turbine sold to P&G was shipped in 1962.  The Unit 12 and Unit 14 paper machines were not constructed until 1966 and 1970, according to Mr. Arendt.  This raises further doubt that the turbines Mr. Arendt testified about were even made by Westinghouse.  Even assuming that the turbines described by Mr. Arendt were made by Westinghouse, there is still no support for the notion that Mr. Arendt was exposed to Westinghouse-attributable asbestos from these turbines.  As Mr. Ware testified, only two of the six turbines sold by Westinghouse to P&G were supplied with thermal insulation.  Mr. Arendt testified that the turbine associated with the Unit 14 paper machine was not insulated.  While he testified that that the turbine associated with the Unit 12 paper machine was insulated, the insulation Mr. Arendt described was not supplied by Westinghouse, but rather supplied and installed by the plant owner.  Mr. Arendt testified that he saw this turbine being insulated, and that the insulation used came from a bag.  The two turbines that Westinghouse sold to P&G that included thermal insulation were insulated in the factory, not in the field, according to Mr. Ware.  Thus the insulation that Mr. Arendt recalled being used on the Unit 12 paper machine turbine was not the insulation supplied by Westinghouse, even assuming that the Unit 12 turbine was originally sold with insulation.  For these reasons Plaintiff has failed to raise an issue of fact that Mr. Arendt was exposed to Westinghouse-attributable asbestos from turbine insulation.

Plaintiff has also not raised an issue of fact that Mr. Arendt was exposed to Westinghouse-attributable asbestos from gaskets associated with Westinghouse turbines.  Mr. Arendt described cleaning up a gasket that was removed from the Unit 14 turbine.  Mr. Arendt

9

only recalled cleaning up this gasket one time, and he stated clearly that this work was not dusty. In addition, he did not know if the gasket that was removed was original to the turbine.

Finally, there is no issue of fact that Mr. Arendt was exposed to asbestos from Westinghouse motors.  First, there is no evidence that any of the Westinghouse motors Mr. Arendt worked with or around even contained asbestos.  Second, even assuming that one or more of the motors did have asbestos-containing components, there is no evidence that the work performed on these motors in Mr. Arendt's presence would have resulted in the release of asbestos fibers.  While Mr. Arendt recalled a number of Westinghouse motors at P&G, and recalled seeing electricians working on them and even doing some work himself on them, there is no reason to believe any of this work exposed Mr. Arendt to asbestos.  According to Mr. Arendt, the work done on motors consisted of replacing the brushes, blowing the motors out with air, and replacing failed motors.  Mr. Arendt testified that the brushes were made of carbon, and that they wore down over time and needed to be replaced periodically.  The material wore down from the brushes would accumulate inside the motor and need to be blown out with air.  Failed motors were disconnected and sent off site for repairs and rewinding.  No one at P&G did any motor winding, according to Mr. Arendt.  There is thus no issue of fact regarding Westinghouse motors.

In any event, testimony that Mr. Arendt was present during the blowing out of motors with compressed air also does not raise an issue of fact that Mr. Arendt was exposed to asbestos from that operation.  This Court has already held that evidence of merely being present when dust is blown out of switchgear fails to give rise to a genuine issue of fact as to Westinghouse-specific causation absent further proof that such dust was, itself, asbestos-containing.  *Anderson v. A.W. Chesterton Co.*, 2012 WL 2877397 at *1, n.1 (E.D. Pa. Apr. 4, 2012).  Plaintiff has not

provided this Court with any evidence which, even when viewed as favorably to her as reasonably possible, would support an abandonment of this Court's reasoning or conclusion in *Anderson*.

In sum, Plaintiff has failed to introduce sufficient evidence to raise an issue of fact that Mr. Arendt was exposed to Westinghouse-attributable asbestos on even a single occasion. Also, because Plaintiff has failed to file any expert reports in this case, Plaintiff has failed to establish Westinghouse-specific causation as there is no expert evidence to show that his alleged work with or around Westinghouse turbines and motors would have resulted in release of respirable asbestos fibers that would have been breathed in by Mr. Arendt in sufficient quantities to cause his disease. Mr. Arendt's exposures to asbestos from the Westinghouse turbines and motors at P&G were, at best, *de minimis*, based on Mr. Arendt's testimony. For these reasons, Westinghouse is entitled to judgment in its favor as a matter of law

## CONCLUSION

For the above reasons, no genuine issue of fact remains as to Westinghouse's purported liability for Plaintiffs' or their decedents' allegedly asbestos-related injuries and Westinghouse is, instead, entitled to a summary judgment in its favor as a matter of law. Therefore, Westinghouse respectfully requests that such summary judgment be issued; that all claims stated against it be dismissed with prejudice; and that it be afforded any and all other relief to which this Court deems it entitled.

Dated this 11th day of August 2014.

**EVERT WEATHERSBY HOUFF**

  /s/ Richard M. Lauth         
Richard M. Lauth
Georgia Bar No. 004259
Admitted Pro Hac Vice – MDL No. 875
(678) 651-1234
rmlauth@ewhlaw.com

Attorneys for CBS Corporation (a Delaware corporation f/k/a Viacom Inc.), successor by merger to CBS Corporation (a Pennsylvania corporation, f/k/a Westinghouse Electric Corporation).

EVERT WEATHERSBY HOUFF
3455 Peachtree Road NE, Suite 1550
Atlanta, Georgia 30326

## CERTIFICATE OF SERVICE

     I HEREBY CERTIFY that on August 11, 2014 I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record via transmission of Notices of Electronic Filing generated by the CM/ECF.

  /s/ Richard M. Lauth