# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE:  ASBESTOS PRODUCT LIABILITY LITIGATION (No. VI) | Consolidated Under MDL DOCKET NO. 875 |
| This Document Relates To: | |
| | E.D. Pa. Case No. 13-CV-60017 |
| GEORGIA ARENDT, INDIVIDUALLY AND AS SPECIAL ADMINISTRATOR OF THE ESTATE OF ANTHONY ARENDT, | (*Transferred from E.D. Wis. Case No. 13-cv-727*) |
| Plaintiff, | Hon. Eduardo C. Robreno |
| v. | Mag. David R. Strawbridge |
| A. W. CHESTERTON COMPANY., et al., | |
| Defendants. | |

## DEFENDANT GENERAL ELECTRIC COMPANY'S MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM OF LAW IN SUPPORT

Defendant General Electric Company ("GE") moves pursuant to Federal Rule of Civil Procedure 56 for entry of summary judgment in its favor on all of plaintiff's claims.  Plaintiff Georgia Arendt alleges that her decedent, Anthony Arendt, was exposed to asbestos from certain products manufactured and distributed by numerous defendants, including GE, and that he developed asbestosis and died of respiratory failure as a result.  Plaintiff contends that the decedent was exposed to asbestos associated with GE products located Procter & Gamble (P&G) paper mills in Green Bay, Wisconsin.  For the reasons that follow, GE's motion should be granted as no genuine dispute of material fact exists and GE is entitled to judgment as a matter of law.  GE further requests that the Court direct entry of final judgment in its favor pursuant to Fed. R. Civ. P. 54(b).  At a minimum, partial summary judgment should be granted on the

particular claims and defenses plaintiff has waived in order to clarify and limit the issues, if any, that will have to be determined at trial.  Fed. R. Civ. P. 56(a) & Ad. Comm. Notes to 2010 Amends.

<u>**BACKGROUND**</u>

For 36 years, Anthony Arendt worked as a factory worker at P&G.  March 2, 2012 Deposition of Anthony Arendt ("Arendt Dep. Vol. I") (Ex. A) at 11:19-25.  He worked as a laborer at P&G's East River Charmin Paper Mill starting in 1956, and later moved to the Fox River facility where he worked until his retirement in 1992.  *Id.* at 12:6-13:12.  Mr. Arendt's work at the large, three-story East River facility entailed working on the converting lines.  *Id.* at 16:4-19.  He worked on smaller "rewinder" converting machines as well as on larger converting machines.  *Id.* at 19:4-20:24.  He moved to the Fox River plant in 1962, where he worked on paper-making machines.  *Id.* at 67:15-68:8.  He described the Fox River facility as a "huge" four-story building.  *Id.* at 68:25-70:7.  Mr. Arendt was a union member throughout his employment at P&G.  *Id.* at 14:1-15:5.

Plaintiff's exposure claims against GE are vague as her complaint failed to allege that Mr. Arendt worked on or around *any* particular GE products.  *See generally* Arendt Complaint (Ex. D).  Plaintiff completely failed to file answers to standard interrogatories and ignored GE's case-specific interrogatories and document requests.  *See* D.E. 27 (requiring plaintiff to file answers to standard interrogatories by November 27, 2013); GE's First Set of Interrogs. and First Set of Req. for the Produc. of Docs. to Pl. (Mar. 14, 2014) (Ex. E).  Plaintiff never served any expert reports.  She also failed to timely disclose or otherwise identify any of decedent's coworkers aside from Mr. Arendt who might have been able to  provide exposure testimony.  *See*

Pl.'s Rule 26(a)(1) Disclosures, Ex. A (December 13, 2013) (Ex. G).[1]  The only fact witness that

can possibly offer any asbestos exposure evidence against GE is Mr. Arendt himself.  Thus, the

only potential evidence of asbestos exposure to GE products comes from  Mr. Arendt's

deposition testimony in his prior case.[2]

The only GE product Mr. Arendt recalled either seeing or working around were GE

motors.  *See, e.g.*, Arendt Dep. Vol. I (Ex. A) at 54:24-55:5 (recalling he worked around GE and

Westinghouse motors); March 9, 2012 Deposition of Anthony Arendt ("Arendt Dep. Vol. II")

(Ex. B) at 337:11-24; 341:16-20 ("I wasn't aware of any type of motor – I know they had

hundreds of motors, but I don't know what they were, GEs [sic] or Westinghouse").  Mr. Arendt

stated that the GE motors were smaller 5- to 75-horsepower motors, and none of the motors

contained *any* type of insulation material.  Arendt Dep. Vol. I (Ex. A) at 155:8-12; Arendt Dep.

Vol. II (Ex. B) at 338:3-339:1; March 12, 2012 Deposition of Anthony Arendt "Arendt Dep. Vol.

III") (Ex. C) at 476:24-477:4.  The electricians would perform routine maintenance work on the

motors, and Mr. Arendt would assist on occasion.  *Id.* at 342:25-343:14 ("Q:  So when you

witnessed this work being performed, you were helping an electrician, correct?  A:  Yes, and

that was not very often.").  The electricians opened the motor's cover, removed its brushes, blew

---

[1] Plaintiff filed a supplemental Rule 26(a)(1) report listing additional individual witnesses on
April 11, 2014 – three days prior to the close of fact discovery.  *See* Pl.'s Supplemental Rule
26(a)(1) Disclosures, Ex. A-1 (April 11, 2014) (Ex. J).  The supplemental disclosures violated
the Court's scheduling order, which required "[a]ll exposure witnesses [to] be disclosed no later
than 30 days before the close of fact discovery."  *See* Scheduling Order, D.E. 27.  Accordingly,
plaintiff cannot now rely on the witnesses identified therein.

[2] Plaintiff filed the instant complaint on June 26, 2013 in the Eastern District of Wisconsin.
Previously, Mr. Arendt filed a nearly identical lawsuit in 2009, alleging he suffered from an
"asbestos disease" resulting from exposure to various defendants' products, including GE
products.  That case was also transferred to this Court as part of MDL 875, this Court dismissed
Mr. Arendt's claims with prejudice, and the Third Circuit affirmed the dismissal.  *See In re
Asbestos Prods. Liab. Litig. (No. VI)*, 718 F.3d 236, 245-46 (3d Cir. 2013).

out the motor, installed new brushes, and then replaced the cover.  *See, e.g.*, Arendt Dep. Vol. I (Ex. A) at 57:20-58:11, 87:6-16, 108:3-13.  Mr. Arendt testified that this process created black dust, which he believed came from the breakdown of the carbon brushes.  Arendt Dep. Vol. II (Ex. B) at 347:5-350:6.  For any major motor repair, such as rewinding, which required manipulation of the motors' parts, those motors were replaced with new ones while the old ones were sent off-site for repair.  Arendt Dep. Vol. I (Ex. A) at 56:11-19, 57:9-17, 110:14-16; Arendt Dep. Vol. II (Ex. B) at 345:3-17.  During his entire career, Mr. Arendt only personally worked on one single motor – repairing the brushes on a Westinghouse 250 horsepower motor in 1988.  Arendt Dep. Vol. I (Ex. A) at 153:15-155:12.   Mr. Arendt never rewound a motor nor worked around anyone undertaking this task.  Arendt Dep. Vol. II (Ex. B) at 346:1-3, 346:21-347:3.

While Mr. Arendt testified that he worked around other products that he alleges may have contained asbestos, none were manufactured by GE.  For instance, he testified that while steam turbines existed at P&G, he only worked around two of them, and neither were manufactured by GE.  Arendt Dep. Vol. I (Ex. A) at 24:10-17.  Likewise, Mr. Arendt  testified that he worked around carpenters, pipefitters, electricians, and mechanics who would occasionally work on the insulated steam pipes running along the ceilings of the facility when its machines were off line.  *Id.* at 21:5-19, 26:6-27:7.  Although he testified that he was exposed to substantial amounts of dust from these insulated pipes on the few occasions when this work was undertaken, he agreed that this dust came from the insulated pipes, none of which he identified as being manufactured by GE or associated with any GE product.  *Id.* at 29:14-30:7.  Mr. Arendt also testified that dust masks were made available by the mid-1960s, and he was required to wear them when cleaning up dust.  Arendt Dep. Vol. II (Ex. B) at 286:6-25 (testifying that masks were mandatory, and he

wore masks when performing his work).  By the early 1970s, P&G was performing asbestos abatement and "thorough" air sampling.  Arendt Dep. Vol. III (Ex. C) at 466:4-467:18.

Mr. Arendt testified that he was diagnosed with asbestosis "[a]bout five years" prior to 2012.  Arendt Dep. Vol. II (Ex. B) at 296:14-297:12.  Plaintiff alleges he passed away on February 13, 2013.  Arendt Compl. (Ex. D).

## ARGUMENT

Summary judgment is appropriate where there is "no genuine issue as to any material fact" and "the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Summary judgment should be granted if a party who bears the burden of proof at trial does not establish an essential element of its case.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  In other words, "summary judgment is essentially 'put up or shut up' time for the non-moving party:  the non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument." *El v. Se. Pa. Transp. Auth.*, 479 F.3d 232, 238 (3d Cir. 2007) (quoting *Berckeley Inv. Group, Ltd. v. Colkitt*, 455 F.3d 195, 201 (3d Cir. 2006)).  "The mere existence of a scintilla of evidence in support of the plaintiff's position" is "insufficient" to defeat a motion for summary judgment.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).  Even if full summary judgment is inappropriate, partial summary judgment should be granted on particular claims and defenses.  Fed. R. Civ. P. 56(a) & Ad. Comm. Notes to 2010 Amends.

## I.    PLAINTIFF'S CLAIM FOR ASBESTOSIS IS BARRED BY THE WISCONSIN STATUTE OF LIMITATIONS

This case is governed by Wisconsin law.[3]  Under Wisconsin law, an action for injury to a

---

[3] When an action is transferred pursuant to 28 U.S.C. § 1407, the transferee court applies the substantive law of the original forum.  *See Ferens v. John Deere & Co.*, 494 U.S. 516 (1990).  Because this case was originally filed in Wisconsin, and because plaintiff's product liability

person must be brought within three years. Wis. Stat. § 893.54.  A cause of action for a disease, like asbestosis, accrues when the plaintiff is diagnosed with that disease.  *Borello v. U.S. Oil Co.*, 388 N.W.2d 140, 142-45 (Wis. 1986).  Mr. Arendt was first diagnosed with asbestosis as early as 2007.  *See* Arendt Dep. Vol. II at 296:14-297:12.  Because his action for asbestosis was not brought until 2013, Plaintiff's claims are barred by Wisconsin's three-year statute of limitations.

## II.   GE IS ENTITLED TO SUMMARY JUDGMENT BECAUSE PLAINTIFF HAS NO EVIDENCE OF CAUSATION

Causation is an essential element of plaintiff's cause of action.  To recover under Wisconsin law, she bears the burden of proving:  (1) that Mr. Arendt was exposed to a particular defendant's asbestos-containing product; and (2) that this exposure was "a substantial factor" in causing his alleged injuries.  *See Anderson v. A.W. Chesterton Co.*, No. 2:11-cv-63482, 2012 WL 2877405, at *1 (E.D. Pa. April 5, 2012) (applying Wisconsin law and granting GE's summary judgment motion because "Plaintiff has failed to identify admissible evidence that GE supplied to Mr. Anderson's worksite the asbestos-containing products to which it is alleged he . . . was exposed").  As shown below, plaintiff's claims against GE utterly fail both prongs of this test.

### A.   Summary Judgment For GE Is Appropriate Because  No Evidence Exists That Mr. Arendt Was Exposed to Asbestos From Any GE Product.

Plaintiff bears the burden of proving that Mr. Arendt was exposed to an asbestos-containing product for which GE is responsible.  *See Anderson*, 2012 WL 2877405, at *1; *see also Risse v. Building Servs. Indus. Supply*, No. 2011AP1415, 2012 WL 2545394, ¶¶ 27-29 (Wis. Ct. App. July 3, 2012).  Thus, to survive summary judgment, plaintiff must specifically identify, via admissible evidence, the asbestos-containing GE products to which Mr. Arendt was exposed.  Plaintiff cannot carry this burden as fact discovery is closed and she has presented no

claims arise from the decedent's alleged exposure to asbestos in Wisconsin, Wisconsin substantive law governs.

evidence whatsoever even *suggesting* that Mr. Arendt worked on or around any GE products that contained asbestos, much less that he was exposed to asbestos from those products.

### 1. No evidence exists that the GE products Mr. Arendt allegedly worked on or around contained asbestos.

Mr. Arendt did not personally work on any GE products. Arendt Dep. Vol. I (Ex. A) at 153:15-155:12 (explaining he only worked on a single motor, and it was not manufactured by GE). The only GE products that Mr. Arendt testified he worked *around* at P&G were motors.[4] *See, e.g.*, *id.* at 54:24-55:5 (recalling he worked around GE and Westinghouse motors). While Mr. Arendt was aware that there were possibly "hundreds" of motors at the East River and Fox River facilities, he could not specify how many were made by GE. Arendt Dep. Vol. II (Ex. B) at 337:11-24; 341:16-20. He did recall, however, that the GE motors were all "smaller" 5- to 75-horsepower motors. Arendt Dep. Vol. I (Ex. A) at 155:8-12; Arendt Dep. Vol. II (Ex. B) at

---

[4] Plaintiff's complaint alleges only that Mr. Arendt was "exposed to asbestos dust or fibers emanating from the asbestos products and/or asbestos insulated equipment which was sold, manufactured, mined, distributed, packaged, installed or otherwise placed into commerce by defendants prior to 1980." Arendt Compl. (Ex. D) at ¶ 25. The complaint fails to set forth any detail about the circumstances of Mr. Arendt's alleged exposure to such asbestos-containing products. As to GE, the Complaint only alleges that GE "manufactured and designed steam generation equipment including without limitation turbines, erected and maintained steam generation equipment and manufactured, designed and/or sold asbestos containing electrical equipment, including without limitation asbestos-containing wires, cables, switching gear, motors, and ballasts, and sold and installed asbestos materials." *Id.* at ¶ 9. As previously noted, plaintiff has presented virtually no evidence in this case, including providing no response whatsoever to GE's interrogatory requests. *See* GE's First Set of Interrogs. and First Set of Req. for the Produc. of Docs. to Pl. (Mar. 14, 2014) (Ex. E). Mr. Arendt's deposition testimony indicates Mr. Arendt only worked around GE motors at P&G, and at most, he stated that it was "possible" there were GE turbines at P&G. *See* Arendt Dep. Vol. II (Ex. B) at 322:24-323:5. However, he did not testify that he ever saw a GE turbine, much less even worked around one. Therefore, to the extent that plaintiff is alleging Mr. Arendt was exposed to GE "turbines, erected and maintained steam generation equipment" and "asbestos-containing wires, cables, switching gear, motors, and ballasts," as contained in her complaint, summary judgment should be granted as there is no evidence whatsoever supporting such claims. To the extent plaintiff attempts to backfill her claims – and she should not be permitted to – GE expressly reserves the right to fully brief why such claims are legally meritless.

338:3-339:1; Arendt Dep. Vol. III (Ex. C) at 476:24-477:4.  Moreover, Mr. Arendt testified that

the only work that was done on these motors at P&G – removing and replacing the brushes – was

not anything he did himself.  Arendt Dep. Vol. II (Ex. B) at 342:6-343:14.  Any more significant

motor rewinding work was done off-site by others.  *Id.* at 345:3-17, 346:1-3, 346:21-347:3;

Arendt Dep. Vol. I (Ex. A) at 56:11-19, 57:9-17, 110:14-16.

Plaintiff cannot point to any testimony or admissible evidence to demonstrate that those

motors even contained asbestos, or that Mr. Arendt would have been exposed to any hypothetical

asbestos component.  Indeed, no reasonable jury could find Mr. Arendt was exposed to asbestos

from GE motors as no evidence exists that he worked on motors, much less that he was around

any electricians performing the kind of work that could have possibly created any airborne

asbestos-containing dust.  Indeed, this Court has recently granted summary judgment on similar

facts.  *See Jurglanis v. Borg Warner Inc.*, MDL 875 No. 2:12-cv-6003-ER, July 21, 2014 Order

at (D.E. 248) (granting summary judgment for GE on an electrician plaintiff's motor claims

because while plaintiff presented evidence that he was exposed to respirable dust from work on

GE motors, and "it is possible that maintenance work on motors can result in exposure to

asbestos," there was no evidence that Decedent was exposed to respirable *asbestos* from GE

motors; therefore, " no reasonable jury could conclude from the evidence that Decedent was

exposed to asbestos-containing respirable dust from maintenance work performed by or near

Decedent on motors (as opposed to non-asbestos-containing respirable dust from that work) such

that it was a substantial factor in the development of his illness, because any such conclusion

would be impermissibly speculative"); *see also Anderson*, 2012 WL 2877405, at *1 (finding

plaintiff – an electrician whose work required disconnecting and replacing motors at P&G – had

failed to show that his work with GE motors would have exposed him to asbestos tape on the coils of the motors because he never rebuilt or rewound them).

The fact that Mr. Arendt was not exposed to asbestos from potentially working around others working on GE smaller AC motors is not surprising.  GE's "motor witness," Mr. Walter Martiny, has demonstrated that the only GE motors that could *potentially* have contained any asbestos-containing component (a piece of asbestos tape) were very large motors — e.g., motors with horsepower ranges in excess of 1,000 or 2,000 horsepower, of which Mr. Arendt testified there were none at P&G.  *See* Martiny Dep. (West Virginia cases) (Ex. F)[5] at 33:2-34:1; *see also id.* at 40:9-13 (GE motor gaskets did not contain asbestos).  But not even every large motor contained  asbestos tape:  asbestos was "used *only* in motors that are expected to experience temperatures of 180 degrees [Celsius / 356 Fahrenheit] or more."  *Id.* at 78:17-79:22, 86:13-15 (emphasis added).  Most motors, even large ones, do not operate in this sort of high-temperature environment.  *Id.* at 83:17-84:4, 85:13-21; *accord id.* at 68:1-9 (estimating that fewer than ten GE motors in a million would contain  any asbestos components).  Accordingly, it would be utterly speculative to conclude that any of the GE motors Mr. Arendt may have worked around contained asbestos.

Even accepting the remote possibility that any GE motors Mr. Arendt may have worked around  contained asbestos components, no reason exists to believe that he would have been exposed to any asbestos component.  This is true as asbestos-containing tape associated with this handful of large motors operating under high temperature was encapsulated within a varnish covering the electrical coils in the motor; a worker could only potentially come into contact with this tape if he or she were physically removing the varnish.  Such varnish removal would only

---

[5]  GE has previously produced this deposition transcript to plaintiff's counsel.

occur if the worker was rewinding the motor's coils.  *See id.* at 69:10-25.  Mr. Arendt

unequivocally testified that he never rewound coils, and such work was typically not performed

by anyone at P&G.  Arendt Dep. Vol. I (Ex. A) at 56:11-19, 57:9-17, 110:14-16; Arendt Dep.

Vol. II (Ex. B) at 345:3-17, 346:1-3, 346:21-347:3.  Further, even if a worker came into physical

contact with this tape, something that Mr. Arendt would never have done, he or she would only

be potentially exposed to asbestos if the tape was handled in such a way that would release its

asbestos fibers.  Martiny Dep. (Ex. F) at 69:10-25.  No evidence exists that Mr. Arendt either

personally performed or was around others undertaking the sort of work on motors that could

have potentially resulted in such an exposure.  *See*, *e.g.*, Arendt Dep. Vol. II (Ex. B) at 346:1-3,

346:21-347:3 (Mr. Arendt never rewound a GE motor).

     Accordingly, *even if* one were to leap to the unlikely assumption that any of the GE

motors at P&G contained asbestos, it would be sheer speculation to conclude Mr. Arendt was

exposed to any asbestos emanating from such a GE motor.  Such speculation is inadmissible and

insufficient to defeat a motion for summary judgment.  *See*, *e.g.*, *Merco Distrib. Corp. v. Comm.

Police Alarm Co.*, 267 N.W.2d 652, 655 (Wis. 1978) ("it is impermissible to base a judgment on

'conjecture, unproved assumptions, or mere possibilities'") (quoting *Schwalbach v. Antigo Elec.

& Gas, Inc.*, 135 N.W.2d 263, 265 (Wis. 1965)).

>          **2.     Plaintiff cannot prove that any hypothetical exposure to asbestos from
>                   a GE product was a substantial factor in causing Mr. Arendt's
>                   injuries.**

*Even if* the Court were to assume, without anything close to the necessary evidence, that

Mr. Arendt may have been exposed to asbestos from a GE motor, plaintiff's claims still fail as

she cannot show that any such alleged exposure was a substantial factor in causing Mr. Arendt's

injuries. Wisconsin follows the "substantial factor" test for causation.  *Singer v. Pnuemo Abex

LLC*, 2012 WL 130295, ¶ 16 (Wis. Ct. App. Jan. 18, 2012). Wisconsin's test is rooted in the

Restatement (Second) of Torts § 431. *See Hatch v. Smail*, 23 N.W.2d 460, 462 (Wis. 1946).

Comment a of the Restatement provides:

> In order to be a legal cause of another's harm, it is not enough that the harm would not have occurred had the actor not been negligent. . . . The negligence must also be a substantial factor in brining about the plaintiff's harm. The word "substantial" is used to denote the fact that the defendant's conduct has such an effect in producing the harm as to lead reasonable men to regard it as a cause, using that word in a popular sense, in which there always lurks the idea of responsibility, rather than in the so-called "philosophic sense" which includes everyone of the great numbers of events without which any happening would not have occurred.

In other words, "[a] mere possibility" of causation is not sufficient. *Zielinski v. A.P. Green Indus., Inc.*, 661 N.W.2d 491, 497 (Wis. Ct. App. 2003). Rather, an asbestos plaintiff must show that his exposure to an asbestos-containing GE product had "such an effect" in causing harm that it would lead a "reasonable person[] to regard it as a cause, using that word in the popular sense." *Merco*, 267 N.W.2d at 654. Plaintiff cannot carry her burden of proof on legal causation.

*First*, for the reasons explained in Part I.A.1, *supra*, plaintiff has not shown that Mr. Arendt was ever even potentially exposed to any asbestos associated with a GE motor. Consequently, plaintiff cannot establish that GE motors were a "substantial factor" in causing Mr. Arendt's injuries. *See Jurglanis*, July 21, 2014 Order (D.E. 248) (citing *Zielinski*, 661 N.W. 2d at 493-94; *Horak v. Building Servs. Indus. Sales Co.*, 309 Wis. 2d 188, 750 N.W.2d 512, 517 (Wis. Ct. App. 2008)).

*Second*, plaintiff failed to file any expert witness disclosures. Although he filed the report of Henry A. Anderson, M.D. as part of her status report pursuant to Administrative Order No. 12, that report makes no reference to GE. *See* Anderson Rep. (Ex. H). Plaintiff has no expert witness who can opine that Mr. Arendt was exposed to asbestos from a GE motor, much

less that any such alleged  exposure was a "substantial factor" in causing his injuries.  Without expert testimony drawing a causal connection between Mr. Arendt's alleged exposures to asbestos from GE motors and his injury, plaintiff's causation claims must fail.  *See Kujawski v. Arbor View Health Care Ctr.*, 407 N.W.2d 249, 252-53 (Wis. 1987) (expert testimony is required when "the trier of fact is faced with matters requiring special knowledge or skill or experience on subjects which are not within the realm of the ordinary experience of mankind").  Plaintiff cannot at this late stage seek to rely on testimony or submit affidavits that exceed the scope of the single expert report filed in connection with this case. Fed. R. Civ. P. 26(a)(2)(B) (reports must contain "a complete statement of all opinions the witness will express and the basis and reasons for them"). Because plaintiff has not submitted any reports besides the report of Dr. Anderson, she cannot rely on any experts' testimony in other cases to support her claims.  Even if plaintiff attempted to impermissibly backfill her claims with past-due expert reports, experts cannot be relied upon to fill in the factual gaps in a plaintiff's case.  *See Elcock v. Kmart Corp.*, 233 F.3d 734, 756 & n.13 (3d Cir. 2000) (abuse of discretion to admit expert testimony which is based on assumptions lacking any factual foundation in the record).

*Third*, even if plaintiff is impermissibly permitted to produce past-due expert reports to resurrect her case, any such opinions would inevitably be inadmissible under *Daubert* and Federal Rules of Evidence 702 and 703, because any such case-specific exposure opinions would have to be based entirely on speculation and assumptions given the lack of exposure evidence discussed above.  Opinions based on speculation and assumption – rather than facts or data – are unreliable from the start and must be excluded.  *Stecyk v. Bell Helicopter Textron, Inc.*, 295 F.3d 408, 414 (3rd Cir. 2002) ("It is an abuse of discretion to admit expert testimony which is based on assumptions lacking any factual foundation in the record."); *Fedorczyk v. Caribbean Cruise Lines, Ltd.*, 82 F.3d 69, 75 (3d Cir. 1996) ("[i]f an expert opinion is based on speculation or

12

conjecture, it may be stricken"); *JMJ Enters., Inc. v. Via Veneto Italian Ice, Inc.*, No. Civ. A. 97-CV-0652, 1998 WL 175888, at *6 (E.D. Pa. April 15, 1998) ("An expert's testimony must have some connection to existing facts"); *Am. Bearing Co. v. Litton Indus.*, 540 F. Supp. 1163, 1172 (E.D. Pa. 1982) (economist's opinion excluded because it was based in part on a statement that was partly based on unsupported assumptions and was, therefore, not the type of statement on which an expert economist would reasonably rely), *aff'd* 729 F.2d 943 (3d Cir. 1984); *see also In re TMI Litig.*, 193 F.3d 613, 698 (3d Cir. 1999); Fed. R. Evid. 702(b) (expert testimony is admissible only if it "is based on sufficient facts or data"); Fed. R. Evid. 702(a) (expert testimony admissible only if it helps the jury "understand *the evidence* or to determine a fact in issue") (emphasis added).

III.   **GE IS ENTITLED TO SUMMARY JUDGMENT AS PLAINTIFF LACKS ADMISSIBLE EXPERT TESTIMONY ESTABLISHING CAUSATION.**

GE is also entitled to summary judgment as plaintiff has no admissible expert testimony establishing medical causation.  While plaintiff submitted a three-page report of Dr. Anderson as part of her status report pursuant to Administrative Order No. 12, she failed to disclose any expert witnesses pursuant to the Court's October 28, 2013, Scheduling Order, and no expert depositions were taken.  *See* D.E. 27 (ordering plaintiff's expert reports to be served by May 14, 2014).  *Even if* Dr. Anderson's opinions are impermissibly allowed to potentially support plaintiff's claims at this late juncture, they must be excluded in any event as they do not withstand *Daubert* scrutiny.

The Supreme Court has made clear that scientific testimony is admissible under Rule 702 only if it is based on "scientific knowledge" that is "derived by the scientific method":

Proposed testimony must be supported by appropriate validation – *i.e.*, "good grounds," based on what is known.  In short, the requirement that an expert's

testimony pertain to "scientific knowledge" establishes a standard of evidentiary reliability.

*Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 590 (1993).  In other words, the district court must act as a "gatekeeper" to "ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable."  *Id.* at 589; *accord Daubert v. Merrell Dow Pharms.*, 43 F.3d 1311, 1316 (9th Cir. 1995) (on remand) (courts have the obligation "to resolve disputes among respected, well-credentialed scientists about matters squarely within their expertise, in areas where there is no scientific consensus as to what is and what is not 'good science,' and occasionally to reject such expert testimony because it was not 'derived by scientific method'").

As the proponent of Dr. Anderson's testimony, plaintiff bears the burden of establishing its admissibility.  *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 743-44 (3d Cir. 1994). Accordingly, plaintiff must show that Dr. Anderson's testimony:  (1) is based upon specialized knowledge that Dr. Anderson is qualified to present; (2) is reliable, i.e., based upon sufficient facts or data and is the product of reliable principles and methods; and (3) will assist the jury to understand the evidence or determine a fact in issue.  Fed. R. Evid. 702.  Even if an expert's methodology in general is acceptable, the expert must demonstrate "the reasonableness" of his approach in a particular case.  *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 153-54 (1999). Plaintiff cannot carry this burden with respect to Dr. Anderson.

### A.    Dr. Anderson's Opinions Should Be Excluded Because They Are The Product Of An Unreliable Methodology.

Dr. Anderson's case-specific report relies on a four-sentence "summary" of Mr. Arendt's work history and one day of Mr. Arendt's three-day deposition.  *See* Anderson Rep. (Ex. H) at Attachment 1.  The "work history" states:

> Mr. Arendt worked in a paper mill from 1956 to 1992.  He worked as a paper machine operator and paper converter.  He was exposed to asbestos used in paper machines, dryer felts, steam pipes, turbines, gaskets, felt, pumps, "mud" for pipe

insulation, and electrical equipment.  Some of his work included cleaning up at the end of the shift and working during shutdowns.

*Id.*  This generic 36-year work history gives no consideration to the amounts of exposure from any particular product or whether Mr. Arendt was even exposed to asbestos from any GE products, much less the extent of any such alleged exposure.  Dr. Anderson simply assumes, based on little more than an expedited review of Mr. Arendt's occupational history and a portion of his deposition transcript – spending a total of two hours to prepare and write his report – that Mr. Arendt was exposed to asbestos that substantially contributed to cause his disease.  *Id.* at 1-3.  Accordingly, his report fails entirely to take into account dose, a key factor in determining specific causation.  Dr. Anderson can do little more than speculate as to the dosage of asbestos fibers Mr. Arendt was actually exposed to – much less what dosage came from GE products – or whether such exposure was sufficient to cause the decedent's disease.  What is more, his report expresses no basis by which he could make this determination.

Thus, Dr. Anderson's so-called "methodology" is impermissibly based "less on a scientific understanding of the specifics of [the decedent's] workplace exposure and the potential effects on [the decedent], and more on merely a general understanding of [the toxin], with only unsupported speculation having been used to relate the general knowledge to the facts surrounding [the decedent's] exposure."  *Wintz v. Northrop Corp.*, 110 F.3d 508, 514 (7th Cir. 1997); *see also Korte v. ExxonMobil Coal USA, Inc.*, 164 Fed. App'x 553, 555, 557 (7th Cir. 2006) (excluding expert where "he did not rely on tests measuring the type and quantity of [the alleged toxin] found" in the *specific product* alleged to have caused the decedents injury).  Because Dr. Anderson failed to conduct or rely on tests measuring the amount of *actual* exposure required in order to opine "whether the dose to which the plaintiff was exposed is sufficient to cause the disease," his testimony fails *Daubert*'s reliability standards and must be excluded.

*Wintz*, 110 F.3d at 513; *see also Daubert*, 509 U.S. at 593 ("[A] key question to be answered in determining whether a theory or technique is scientific knowledge that will assist the trier of fact will be whether it can be (and has been) tested."); *Chapman v. Maytag Corp.*, 297 F.3d 682, 687 (7th Cir. 2002) ("[T]he absence of any testing indicates that [the expert's] proffered opinions cannot fairly be characterized as scientific knowledge. Personal observation is not a substitute for scientific methodology and is insufficient to satisfy *Daubert's* most significant guidepost.").

### 1. Dr. Anderson's "every exposure" theory impermissibly conflates risk with causation.

In past cases, Dr. Anderson has espoused the "every exposure" theory of asbestos exposure. *See* Sept. 25, 2012 Deposition of Henry Anderson, M.D., *Hass v. Albany Internat'l, et al.*, E.D. Pa. No. 2:09-cv-60298 ("Anderson Dep.") (Ex. I) at 70:21-71:8 ("it's a cumulative exposure from many sources and all of the sources contribute to his occurrence of his disease"). However, as Dr. Anderson has explained, the "every exposure" theory addresses *risk*, not *causation*. *Id.* at 136:23-137:11. The question in this litigation, however, is not whether Mr. Arendt's exposure to asbestos from a defendant's product increased his *risk* of injury. Rather, plaintiff must show that his exposure to asbestos from a particular defendant's product was a "substantial factor" in *causing* injury. *See Singer v. Pnuemo Abex LLC*, 2012 WL 130295, ¶ 16 (Wis. Ct. App. Jan. 18, 2012).

Even though Dr. Anderson himself agrees that *risk* cannot be conflated with *causation*, Anderson Dep. (Ex. I) at 137:12-18, he made this exact fatal error when opining that once an individual develops an asbestos-related disease, every exposure to asbestos is a cause of the disease. *Id.* at 71:9-25 ("It's kind of the old what straw broke the camel's back? Is it the first straw or the last straw? And I can't sort out which of those."). But the mere fact that a toxin increases the *risk* of injury is not proof that the toxin *caused* an injury. *See* Reference Manual on

Scientific Evidence 552, 609 (3d ed. 2011) (explaining that "an association is not equivalent to causation," and that epidemiological studies do not address specific causation); *Magistrini v. One Hour Martinizing Dry Cleaning*, 180 F. Supp. 2d 584, 591 (D.N.J. 2002) (same), *aff'd* 68 Fed. App'x 356 (3d Cir. 2003).[6]  Indeed, the "straw the broke the camel's back" analogy turns the scientific method on its head:  rather than evaluating all potential causative factors *before* reaching his conclusion (and rather than evaluating the extent of Mr. Arendt's exposures to a particular defendant's products), Dr. Anderson cannot simply assume that all exposures were causative based on nothing more than a temporal association.  *See Haller v. AstraZeneca Pharms. LP*, 598 F. Supp. 2d 1271, 1295 (M.D. Fla. 2009) (excluding expert who relied on the "straw that broke the camel's back" analogy because the expert failed to adequately explain how he considered and ruled in or out particular potential causes).

### 2.    Dr. Anderson should not be allowed to offer any opinions about "significance."

Even if Dr. Anderson is impermissibly permitted to opine that every exposure to asbestos was a cause of Mr. Arendt's disease, he should not be allowed to opine that every fiber of asbestos is "significant" or "substantial."  Indeed, as Dr. Anderson explained, his use of these terms has no medical meaning:  "But that wouldn't be a published paper.  You wouldn't – what you're doing is asking for an opinion, *and it's a constructed legal kind of issue* as significant as opposed to the concept of dose-response. . . .  You won't see in the medical records 'significant' used."  Anderson Dep.  (Ex. I) at 85:13-86:13.

In short, Dr. Anderson's characterizations of significance reflect his personal physician's interpretation of a legal term of art.  This sort of opinion testimony is inadmissible.  *Berckeley*

---

[6]  The difference between risk and causation is undisputed:  not everyone who is exposed to asbestos actually develops cancer.  *See* Anderson Dep. (Hass case) (Ex. I) at 90:12-23.

*Inv. Group, Ltd. v. Colkitt*, 455 F.3d 195, 217 (3d Cir. 2006) ("an expert witness is prohibited

from rendering a legal opinion"); *Flickinger v. Toys R Us, Inc.*, No. 3:10-CV-305, 2011 WL

2160493, at *5 (M.D. Pa. May 31, 2011) (barring experts from offering legal conclusions such a

"substantial cause" of plaintiff's injuries was defendant's failure to properly secure a plastic bin

from a bulk candy dispenser); *Thomas v. Sheahan*, 514 F. Supp. 2d 1083, 1094 (N.D. Ill. 2007)

(barring expert opinion that defendant's policies or practices "were a 'substantial causal factor'"

in plaintiff's death).  Given Dr. Anderson would not use the term "significant" in a medical

setting, he should not be allowed to use that term in a legal setting.  *See Kumho Tire Co.*, 526

U.S. at 152 (requiring that an expert "employs in the courtroom the same level of intellectual

rigor that characterizing the practice of an expert in the relevant field").

### 3.      The "every exposure" theory is not scientifically reliable and should be excluded in its entirety.

GE acknowledges that this Court has denied *Daubert* motions where a defendant has

sought wholesale exclusion of the "every exposure" theory.  GE respectfully disagrees with these

decisions, which are at odds with the ever-expanding list of courts' throughout the nation.

Because plaintiff cannot bear her burden of proving that the "every exposure" theory is reliable

science, this Court should exercise its gatekeeping duty and exclude Dr. Anderson's opinions to

the extent he espouses an "every exposure" theory.

### 4.      The "every exposure" theory ignores any consideration of dose.

Dr. Anderson's "everything is cumulative" theory does not comport with the most

fundamental principle of the science of toxicology — the dose makes the poison.  Reference

Manual on Scientific Evidence 636 (3d ed. 2011).  In other words, disease results only when

exposures to a substance reach a level that overwhelms the body's defenses, called a "threshold"

point.  Aspirin, alcohol, sunlight, even known "poisons" like arsenic, are only poisonous if the

dose is high enough, and are otherwise harmless or even beneficial at lower doses.  *See* David L.

Eaton, *Scientific Judgment and Toxic Torts—A Primer in Toxicology for Judges and Lawyers*, 12

J.L. & Pol'y 5, 11 (2003) ("All substances are poisonous—there is none which is not; the dose

differentiates a poison from a remedy" (quoting Paracelsus, the "father of toxicology")).

Asbestosis, like lung cancer, is a dose-response disease, Anderson Dep. (Ex. I) at 82:12-

16, 137:4-11.  However, the "every exposure" opinion ignores the principle of dose: (1) as

discussed above, Dr. Anderson made no effort to assess the extent of Mr. Arendt's exposure to a

particular defendant's product, (2) he made no attempt to estimate Mr. Arendt's dose of

exposure, and (3) he made no effort to determine if Mr. Arendt had any exposure to asbestos

from a GE product.  *See generally* Anderson Rep. (Ex. H).

By ignoring the concept of dose, the "every exposure" theory reduces the analysis to an

exposure test.  Dr. Anderson demonstrated just how minimal the exposure test is:

- If a person smoked a pack of Marlboro cigarettes every day for forty years — but once smoked a single Camel cigarette during that period — Dr. Anderson believes that the Camel would be a contributing factor in the person's lung cancer.  Anderson Dep. (Ex. I) at 72:17-73:12.

- All exposures count because "[i]t's kind of the old what straw broke the camel's back?  . . .  And I can't sort out which of those."  *Id.* at 71:9-25.

Accordingly, no matter what exposure is shoveled into Dr. Anderson's "model," the result is

always the same:  the defendant's product was a substantial factor.  The theory is therefore

advocacy, not science, and must be excluded under *Daubert*.

Dr. Anderson's failure to consider dose is contrary to the decisions of courts nationwide

that have acknowledged the primacy of dose and the need to develop a dose estimate to support a

toxic tort case.  Indeed, in a recent opinion the Pennsylvania Supreme Court thoroughly analyzed

the "every exposure" theory and concluded that it was too unreliable to be admissible:  "Simply

put, one cannot simultaneously maintain that a single fiber among millions is substantially

causative, while also conceding that a disease is dose responsive." *Betz v. Pneumo Abex, LLC*, No. 38 WAP 2010, 2012 WL 1860853, at *23 (Pa. May 23, 2012) (finding that the expert's "*any-exposure opinion is in irreconcilable conflict with itself*" (emphasis added)); *accord Dixon v. Ford Motor Co.*, No. 546, 2012 WL 2483315, at *7 (Md. Ct. Spec. App. June 29, 2012) (the opinion that each and every exposure is "'substantial' "simply [is] not a scientific conclusion"); *Gregg v. V-J Auto Parts, Co.*, 943 A.2d 216, 226-27 (Pa. 2007) ("[W]e do not believe that it is a viable solution to indulge in a fiction that each and every exposure to asbestos, no matter how minimal in relation to other exposures, implicates a fact issue concerning substantial-factor causation"); *Borg-Warner Corp. v. Flores*, 232 S.W.2d 765, 771-72 (Tex. 2007) ("absent any evidence of dose, the jury could not evaluate the quantity of respirable asbestos to which Flores might have been exposed or whether those amounts were sufficient to cause asbestosis"); *In re W.R. Grace & Co.*, 355 B.R. 462, 476 (Bankr. D. Del. 2006) (the "'no threshold' model . . . flies in the face of the toxicological law of dose-response, that is, 'that the dose makes the poison . . . .'"); *In re Toxic Substance Cases*, No. A.D. 03-319, 2006 WL 2404008, at *6-7 (Pa. Com. Pl. Aug. 17, 2006); *Bartel v. John Crane, Inc.*, 316 F. Supp. 2d 603, 611 (N.D. Ohio 2004) (concluding that the "any exposure" theory is "not supported by the medical literature"), *aff'd sub nom. Lindstrom v. A-C Prod. Liab. Trust*, 424 F.3d 488 (6th Cir 2005).[7]

---

[7] The dose concept is widely recognized, and is a required part of expert testimony in all other toxic tort litigation. *E.g.*, *Joiner*, 522 U.S. at 144-47 (rejecting a PCB injury claim where there was no dose assessment); *McClain v. Metabolife Int'l, Inc.*, 401 F.3d 1233, 1241 (11th Cir. 2005) ("In toxic tort cases, '[s]cientific knowledge of the harmful level of exposure to a chemical, plus knowledge that [the] plaintiff was exposed to such quantities[,] are minimal facts necessary to sustain the plaintiff's burden'"); *Mitchell v. Gencorp, Inc.*, 165 F.3d 778, 781 (10th Cir. 1999); *Parker v. Mobil Oil Corp.*, 857 N.E.2d 1114, 1120-22 (N.Y. 2006).

5.      **The "every exposure" theory has not been tested, is not found in peer-reviewed literature, and has no known or knowable error rate.**

As noted, a "key question" in the *Daubert* analysis is whether an expert's theory has been tested.  *Daubert*, 509 U.S. at 593.  The "every exposure" theory has not been tested — it is simply a litigation construct.  For example, Dr. Anderson has been unable to point to any scientific literature testing the theory or measuring the increased risk of cancer associated with low levels of exposure.  Anderson Dep. (Ex. I) at 85:13-20; *see Daubert*, 509 U.S. at 593 ("[a]nother pertinent consideration is whether the theory or technique has been subjected to peer review and publication").[8]  Without having data to support his theory, there is no way to assess its error rate.  Anderson Dep. (Ex. I) at 81:3-19 (admitting that "49 percent of the time I might be wrong"); *see also Total Containment, Inc. v. Dayco Prods., Inc.*, No. Civ.A. 1997-CV-6013, 2001 WL 1167506, at *7-8 (E.D. Pa. Sept. 6, 2001) (noting a model that lacks adequate underlying data has an infinite rate of error); *see also Daubert*, 509 U.S. at 594 (a court "ordinarily" should consider a technique's known or potential rate of error).  Accordingly, the "every exposure" theory fails all of the reliability factors identified by the *Daubert* Court.[9]

B.      **Dr. Anderson's Opinion Fails To Consider Alternate Causes.**

Even assuming Dr. Anderson's "methods" have some indicia of reliability, Dr. Anderson violated his own standard of a proper methodology — namely, that an in-depth occupational

---

[8]  This Court has previously acknowledged defense arguments that the "every exposure" theory has not been adequately tested, but concluded that the lack of testing did not support exclusion of the "every exposure" theory.  *Rabovsky v. Air & Liquid Sys. Corp.*, No. 10-3202, 2012 WL 252919, at *3 (E.D. Pa. Jan. 25, 2012).  GE respectfully disagrees.  "The courtroom is not the place for scientific guesswork, even of the inspired sort.  Law lags science; it does not lead it." *Rosen v. Ciba-Geigy Corp.*, 78 F.3d 316, 319 (7th Cir. 1996).

[9]  The *Daubert* Court identified the following factors:  (1) whether the theory has been tested, (2) whether the theory has been subjected to peer review and publication, (3) the known or potential rate of error, and (4) whether the theory is generally accepted.  *Daubert*, 509 U.S. at 593-94.  With regard the general acceptance, the only experts who endorse the "every exposure" theory are a small cadre of plaintiffs' experts in the asbestos litigation.

work history is needed and that all potential exposures should be considered.  As discussed, an expert must employ "in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field."  *Kumho Tire Co.*, 526 U.S. at 152.  Dr. Anderson has failed entirely to take into account any alternate causes for Mr. Arendt's disease.  Notably, although Dr. Anderson notes that Dr. Arendt smoked cigarettes from 1951 until 1978, his opinions do not indicate whether he took this exposure into account.  Similarly, although Dr. Anderson's report considers Mr. Arendt's industrial work history, he fails entirely to determine whether Mr. Arendt was exposed to environmental toxins *other* than asbestos that might have caused his disease.

Dr. Anderson allowed the plaintiff's attorneys to control the agenda to reach a preordained result – he failed to consider other equally plausible causes of the disease simply because the plaintiff's attorneys did not provide that information or ask him to look at it.  By artificially narrowing his inquiry, Dr. Anderson "cast aside his scholar's mantel and became a shill for" plaintiff.  *Mid-State Fertilizer Co. v. Exchange Nat'l Bank of Chicago*, 877 F.2d 1333, 1340 (7th Cir. 1989).  The Court should "protect[] the interests of the judicial system" by excluding his made-for-litigation opinion.  *Id.*  .

\*        \*        \*

In sum, plaintiff cannot bear her burden of establishing the reliability of Dr. Anderson's testimony, and Dr. Anderson's opinions must be excluded.  Because Dr. Anderson is plaintiff's sole case-specific medical causation expert, his exclusion leaves plaintiff without the evidence required to establish her claim that Mr. Arendt's injuries were caused by asbestos, much less asbestos from GE products.  As a result, GE is entitled to summary judgment.

## CONCLUSION

For the foregoing reasons, General Electric Company requests that this Court enter summary judgment in its favor on all of plaintiff's claims.  GE further requests that the Court

direct entry of final judgment in its favor pursuant to Fed. R. Civ. P. 54(b).  At a minimum,

partial summary judgment should be granted on the particular claims and defenses plaintiff has

waived in order to clarify and limit the issues, if any, that will have to be determined at trial.

Fed. R. Civ. P. 56(a) & Ad. Comm. Notes to 2010 Amends.  A proposed order is attached hereto

as Exhibit K.

Dated:  August 11, 2014                           Respectfully submitted,

                                                  GENERAL ELECTRIC COMPANY


                                                  By:   /s/ Michael L. Lisak
                                                        One of Its Attorneys

                                                        Timothy E. Kapshandy
                                                        Michael L. Lisak
                                                        SIDLEY AUSTIN LLP
                                                        One South Dearborn Street
                                                        Chicago, Illinois  60603
                                                        (312) 853-7000
                                                        tkapshandy@sidley.com
                                                        mlisak@sidley.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 11, 2014, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system which will send notification of such filing to all attorneys of record.

Dated:  August 11, 2014

*/s/ Michael L. Lisak*