THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| GEORGIA ARENDT, Individually and as Special Administrator of the Estate of ANTHONY ARENDT, Deceased, | ) ) ) ) |
| Plaintiff, | ) Case No.: 13-cv-60017 ) |
| v. | ) *Trans. from E.D. Wis. No.:* 13-cv-727 ) |
| A.W. CHESTERTON COMPANY, *et al.*, | ) ) |
| Defendants. | ) |

**PLAINTIFF'S RESPONSE TO OWENS-ILLINOIS, INC.'S
MOTION FOR SUMMARY JUDGMENT**

Plaintiff responds to and opposes Owens-Illinois, Inc.'s ("OI") Motion for Summary Judgment, and in support thereof states as follows:

INTRODUCTION

In it's motion for summary judgment OI makes no claim that there is insufficient evidence of exposure to an asbestos-containing Owens-Illinois product such that it is a "substantial factor" in producing Decedent Anthony Arendt's ("Arendt") injury. *See Zielinski v. A.P. Green Indus.*, 661 N.W.2d 491 496-97 (Wis. Ct. App.2003) (discussing Wisconsin's summary judgment standard for causation as it relates to asbestos exposure) . Rather, OI's motion for summary judgment is brought only on two grounds: (1) OI argues Plaintiff's cause of action is time barred by Wisconsin's three-year statute of limitations ("SOL") Wis. Stat. § 893.54; and (2) OI argues that Plaintiff lacks an admissible expert opinion on the issue of causation. As OI has waived any argument on sufficiency of exposure evidence, Plaintiff introduces the same only to the extent it bears on the legal arguments raised by OI.



FACTS

I.       *Procedural History of Decedent's Cases in the MDL*

In a previous complaint filed on August 5, 2009, Decedent Anthony Arendt ("Arendt") alleged an injury of "asbestos disease" based on the conduct of various defendants including OI. (Ex. 1 at ¶ 10.) The complaint alleged counts of both strict products liability and negligence against the product manufacturer defendants, including OI. (Ex. 1 at ¶¶12-23, ex. "A.") This case was transferred into MDL-875 ("MDL") on October 8, 2009. (Ex. 2.) Following the transfer, this Court issued a ruling in the MDL on November 14, 2011, that bilateral pleural thickening without "impairment" was not a compensable injury. (Ex. 3 at 21.)  Four months subsequent to the November ruling, this Court entered an order dismissing Arendt's previous case on [Date] for "failure to show any asbestos-related medical impairment" in the AO12 report documentation. (Ex. 4 at 3.)

Arendt passed away on February 13, 2013. (Ex. 5.) Thereafter, his wife filed a new action (individually and on Decedent's behalf) on June 26, 2013 alleging an injury of "asbestosis" resulting in Decedent's death as a result of OI and various other defendants' conduct. (Ex. 6 at ¶28; ex. "A.") The complaint alleged a count of wrongful death (Wis. Stat. § 895.03[1]) and sounded in both negligence and strict products liability. (Ex. 6 at ¶¶25-34.)

II.      *Relevant Medical and Exposure Evidence*

Plaintiff's medical expert, Henry A. Anderson, M.D. submitted an opinion on medical

---

[1]"Whenever the death of a person shall be caused by a wrongful act, neglect, or default is such as would, if death had not ensued, have entitled the party injured to maintain an action and recover damages in respect thereof then and in every such case the person who would have been liable, if death had not ensued, shall be liable to an action for damages notwithstanding the death of the person injured[.]" Wis Stat. § 895.03.

causation in this case on September 24, 2013. (Ex. 7.) In the report Dr. Anderson concluded in relevant part:

> The extensive bilateral pleural thickening, pleural plaques with calcification; loculated pleural effusions with trapped lung with atelectasis were caused by [Arendt's] occupational exposure to asbestos[.]
> . . .
>
> The pleural thickening, calcified plaques and interstitial fibrosis were the cause of his death.
> ...
>
> All Mr. Arendt's asbestos exposure circumstances while employed as a factory worker– a paper maker and a paper converter– at a paper mill for 36 years, from 1956 to 1992 substantially contributed to cause his asbestosis and extensive bilateral pleural thickening and plaques with calcification.

(Ex.7 at 3.) In arriving at this opinion, Dr. Anderson reviewed Arendt's medical records, death certificate, work history, and deposition taken March 2, 2012. (Ex. 7 at 3, 4-59.)

In Arendt's March 2, 2012 deposition, he gave testimony specifically relevant to his exposure to OI's asbestos-containing pipe insulation "Kaylo" at the Charmin Paper Mill in Green Bay, Wisconsin. ("Charmin"). (Ex. 7, Arendt Dep. at 12, 22-25, 27-31, 35-36, 41, 50-51, 54.)[2] Arendt testified as follows:

• Arendt worked at the mill from 1956-1962 (Ex. 7, Arendt Dep. at 12.)

• There were 75, 150, and 600 pound insulated steam pipes running all throughout the Charmin plant. (Ex. 7, Arendt Dep. at 23, 25.)

• Insulators would knock off old insulation from the steam pipes which looked "like powder" or chunks of plaster when it fell, and it would float down on Arendt and others

---

[2] The full transcript of Arendt's March 2, 2012 deposition is included as an attachment to Dr. Anderson's report attached hereto as exhibit 7. Plaintiff references exhibit 7 when citing relevant testimony, but makes page designations based on the original transcript pagination for ease of reference.

working below. (Ex. 7, Arendt Dep. at 27-28.)

- Arendt was about 10-15 feet away when this work took place and wasn't wearing a mask. (Ex. 7, Arendt Dep. at 28-29.)

- The dust was white-ish gray and would blow around the Charmin plant. (Ex. 7, Arendt Dep. at 29-30.)

- Arendt had to clean up the dust, first blowing it into a pile with an air hose, and then shoveling it. (Ex. 7, Arendt Dep. at 31.)

- The cleaning process caused the dust to be re-suspended in the air. (Ex. 7, Arendt Dep. at 32.)

- Arendt breathed the dust produced from these activities at the Charmin plant. (Ex. 7, Arendt Dep. at 29.)

- Arendt remembers the name "Kaylo" on preformed insulation. (Ex. 7, Arendt Dep. at 54.)

- Workers cut the preformed pieces of insulation with a saw or knife, which produced visible airborne dust. (Ex. 7, Arendt Dep. at 50-51.)

## ARGUMENT

I.  *Legal Standard for Summary Judgment*

In other MDL asbestos cases, this court has stated the applicable standards for summary judgment:

> Summary judgment is appropriate if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  "A motion for summary judgment will not be defeated by 'mere existence' of some disputed facts, but will be denied when there is a genuine issue of material fact." *Am. Eagle Outfitters v. Lyle & Scott Ltd.*, 584 F.3d 575, 581 (3d Cir. 2009) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-48 (1986)). A fact is "material" if proof of its existence or non-existence might affect

the outcome of the litigation, and a dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson,* 477 U.S. at 248.

In undertaking this analysis the court views the facts in the light most favorable to the non-moving party. "After making all reasonable inferences in the nonmoving party's favor, there is a genuine issue of material fact if a reasonable jury could find for the nonmoving party." *Pignataro v. Port Auth. of N.Y. & N.J.*, 593 F.3d 265, 268 (3d Cir. 2010) (citing *Reliance Ins. Co. v. Moessner,* 121 F.3d 895, 900 (3d Cir. 1997)). "While the moving party bears the initial burden of showing the absence of a genuine issue of material fact, meeting this obligation shifts the burden to the non-moving party who must 'set forth specific facts showing that there is a genuine issue for trial.'" *Anderson,* 477 U.S. at 250.

*Dion v. Anchor Packing Company*, 10-64681, 2011 U.S. Dist. LEXIS 151570 (E. D. Pa. Oct. 5, 2011).

II.     *Plaintiff's Claim is not Barred by the Wisconsin Statute of Limitations*

Under Wis. Stat. § 893.54, Plaintiff was required to file her claim, within three years of when she "discover[ed], or in the exercise of reasonable diligence should have discovered, not only the fact of injury, but also that the injury was probably caused by the defendant's conduct or product." *Meracle v. Children's Serv. Soc'y of Wis.*, 437 N.W.2d 532, 534 (Wis. 1989.) This determination is based on "when [the Plaintiff] should have known that [the decedent] had a claim." *Howard v. Philip Morris USA, Inc.*, 98 Fed. App'x 535, 538 (7th Cir. 2004). As the moving party the burden is on OI to provide sufficient evidence of every element of an affirmative defense. *El v. Southeastern Pa. Transp. Auth.*, 479 F.3d 232, 237 (3d Cir. 2007). OI's argument fails because it has not demonstrated Decedent's claim accrued more than three years prior to the filing of this lawsuit.

As OI noted in it's Motion to Dismiss in the same action, Decedent had a previous case filed in the MDL on August 5, 2009. (Ex. 1; OI Mot. to Dismiss , ECF No. 1 at 1-2.) No specific

evidence of impairment was ever presented in that case, and it was ultimately dismissed on March 12, 2012. (Ex. 4.) In this Court's November 14, 2011 MDL order, Judge Robreno ruled that bilateral pleural thickening without "impairment" was not compensable. (Ex. 3 at 21.) The Court's March 12th order dismissing Decedent's prior case four months subsequent to the MDL order was based on "failure to show any asbestos-related medical impairment." (Ex. 4 at 3.) Despite these facts, OI now claims in the instant motion that Arendt's current claim accrued in March of 2006, and was time-barred by March of 2009 (several months prior to the filing of the original lawsuit). (OI Mot. for Summ. J., ECF No. 94 at 4.) Taking into account the Court's disposition of Arendt's previous case, OI's assertion leads to the untenable position that the Decedent's claim accrued six years prior to this Court's finding a "failure to show any asbestos-related medical impairment." (*See* Ex. 4 at 3.)

      The disconnect between the Court's prior holdings and OI's argument is OI's failure to demonstrate that Arendt suffered "impairment" from his asbestos exposure which he discovered, or in reasonable diligence should have discovered, prior to June 26, 2010 (cut-off date for discovery of the alleged injury in order for Plaintiff's complaint to be timely under Wis. Stat. § 893.54). The sole piece of evidence cited by OI in support of its argument is a deposition of Arendt (taken prior to the dismissal of his previous case) from March 9, 2012, in which Arendt testifies that he was diagnosed with asbestosis "about five years ago. . . . Or maybe six years ago." (OI Mot. for Summ. J., ECF No. 94 at 4.)

      This evidence is insufficient to prove that Arendt actually had a medical diagnosis of asbestosis as of March 2006. The decedent is not a medical expert. There was no foundational testimony offered to show that he was aware of the difference between asbestosis and other non-

malignant conditions associated with exposure to asbestos. Nor did defense counsel review the medical records of Dr. Potts with Mr. Arendt which purportedly showed a diagnosis of asbestosis. In fact, Mr. Arendt's medical records directly contradict OI's position. In an appointment record dated November 27, 2006 (8 months after OI's purported accrual date), Dr. Potts concludes, "the patient does not have asbestos-related pulmonary fibrosis (asbestosis)." (Ex. 8 at 13.) Or a similar note from Dr. Potts on November 25, 2009 where he states, "There is no evidence for asbestosis (pulmonary fibrosis related to asbestos exposure)." (Ex. 8 at 10.)

Even assuming *arguendo* OI's evidence is sufficient to eliminate any issue of material fact whether Arendt actually had a medical diagnosis of asbestosis in March of 2006, OI has still offered no evidence as to when any "impairment" related to the non-malignant condition occurred. The (unsubstantiated) March 2006 diagnosis alone would be insufficient to conclude there was a compensable injury as of that date. (*See* Ex. 3.)

Under Wisconsin's "discovery rule" Plaintiff was obligated to bring this claim within three years of discovering that there was an injury. *Meracle*, 437 N.W.2d at 534. The injury here was not discovered by the Plaintiff until the time of Arendt's death on February 13, 2013. (Ex. 5.) OI has introduced no evidence suggesting that discovery of a compensable injury would have occurred with reasonable diligence prior to that date. Nor could OI meet its burden, since the Decedent had already attempted to prosecute a case for injury related to asbestos within the purported SOL and this Court held there was no evidence of compensable injury at that time. (Ex. 4 at 3.) This case was filed on June 26, 2013, four months after Arendt's death, and well within the three-year statute of limitations. (Ex. 6.)

III.     *Plaintiff has Disclosed an Admissible Causation Opinion Against OI*

Contrary to OI's second argument that there is no admissible expert opinion against OI, Plaintiff's medical expert, Dr. Anderson, submitted an opinion on medical causation in this case on September 24, 2013. (Ex. 7.) Without making specific reference to the opinion of Dr. Anderson, OI argues that no expert "draw[s] the specific causation between Arendt's exposure to asbestos from an Owens-Illinois product and his alleged asbestosis and death." (OI Mot. for Summ. J., ECF No. 94 at 9.) Contrary to OI's argument Dr. Anderson's report states:

> *All* Mr. Arendt's asbestos exposure circumstances while employed as a factory worker– a paper maker and a paper converter– at a paper mill for 36 years, from 1956 to 1992 substantially contributed to cause his asbestosis and extensive bilateral pleural thickening and plaques with calcification.

(Ex. 7 at 3 (emphasis added).)

"*All* Mr. Arendt's asbestos exposure circumstances" referenced in Dr. Anderson's report would include asbestos exposure attributable to OI mentioned in Dr. Anderson's reliance materials. (Ex. 7 (emphasis added).)These would include exposure information from Arendt's March 2, 2012 deposition, as well as his work history provided by CVLO. (*See* Ex. 7 at 4 ("attachment 1"); Ex. 7, Arendt Dep. at 12, 22-25, 27-31, 35-36, 41, 50-51, 54; *supra* discussion in "FACTS" sec. II.)

Finally, and again without reference to the opinion of Dr. Anderson, OI contends that Plaintiff's expert opinions are inadmissible because they are not based on reliable facts or data. OI is wrong, and its argument misstates the evidentiary requirements for experts. OI does not explain why the reliance materials of Dr. Anderson (which include the sworn testimony of the Decedent regarding the facts of his personal exposure) would be "unreliable." Further, the Federal Rules of Civil Procedure allow for an expert witness to accept certain assumptions

provided by counsel. *See* Fed. R. Civ. P. 26(b)(iii). As the Supreme Court has noted:

> It has long been accepted that an expert witness may voice an opinion based on facts concerning the events at issue in a particular case even if the expert lacks firsthand knowledge of those facts. At common law, courts developed two ways to deal with this situation. An expert could rely on facts that had already been established in the record. But because it was not always possible to proceed in this manner, and because record evidence was often disputed, courts developed the alternative practice of allowing an expert to testify in the form of a "hypothetical question." Under this approach, the expert would be asked to assume the truth of certain factual predicates, and was then asked to offer an opinion based on those assumptions. See 1 K. Broun, McCormick on Evidence §14, p. 87 (6th ed. 2006); 1 J. Wigmore, Evidence §677, p. 1084 (2d ed. 1923) ("If the witness is skilled enough, his opinion may be adequately obtained upon hypothetical data alone; and it is immaterial whether he has ever seen the person, place or thing in question" (citation omitted)). The truth of the premises could then be established through independent evidence, and the fact finder would regard the expert's testimony to be only as credible as the premises on which it was based.

*Williams v. Illinois*, 132 S. Ct. 2221, 2233-34 (2012). Plaintiff's have submitted an admissible expert report regarding medical causation in relation to an OI products which meets the evidentiary requirements of admissibility.

## CONCLUSION

For all the reasons stated above, this Court should deny OI's Motion for Summary judgment.

Dated: September 8, 2014

/s/ *Robert G. McCoy*
Attorney for the Plaintiff

Robert G. McCoy
Attorney for the Plaintiff
Cascino Vaughan Law Offices, Ltd.
220 S. Ashland Avenue
Chicago, Illinois 60607
(312) 944-0600
(312) 944-1870 (fax)